Good morning ladies and gentlemen and welcome to the Ninth Circuit. Judge Myron Smith and I are very delighted to be joined today by Judge Myron Bright who joins us from the Eighth Circuit. Judge Bright has sat with us on a number of occasions and we are delighted to welcome him back to Pasadena. I've got to tell you my story though. I sat earlier with Judge Ferguson and he sorted eleven he said and Judge Bright comes from Fargo, North Dakota. And how many of you have ever been to Fargo? How many of you have ever been to Fargo? Nobody. But two people raised their hands and I interjected. And how many of you have seen the movie Fargo? Okay, so now we're well acquainted. We have a number of cases on the docket today. There are three cases that are submitted. I'm going to announce those. So now these have been briefed without the benefit of oral argument. That's Bonilla-Colindres and Pacific Mechanical Corporation and Villa v. Astro. I have one item of business I want to take care of at this time. The last case is marked Seal 1 v. Seal A. Are the attorneys for that case present? Would you stand? Yes. This case was filed under seal and the question that the court has is whether it needs to be argued under seal as well. Do we have to clear the case? Yes. Thank you very much. You may be seated. With that we will proceed with the cases in order. And our first case will be, I'm not going to try and pronounce the last name, but his first name is Zilbert. So if you all are ready, and then you're going to tell us the correct pronunciation. That will be a quiz. Good morning, Your Honor. The correct pronunciation is Fair Havanesian. Thank you. Wait a minute until I get my ears fixed up. Okay. Try it now. My name is Victoria Bisman and I'm here on behalf of Petitioner Zilbert Fair Havanesian. Petitioner is seeking asylum due to persecution on account of his political opinion. And furthermore, Petitioner was a member of political opposition party. And on March 19, 2004, Petitioner married Seda Aslayan. Based on the fact that Ms. Aslayan mother was one of the leaders of political opposition party, People's Party of Armenia, the immigration court at San Pedro on February 2, 2004, granted Ms. Aslayan political asylum. Ms. Aslayan had herself suffered persecution by Armenian. Is he entitled to asylum or any other status in this country on the basis of his marriage? No, Your Honor, because he married subsequent to grant of asylum. So the fact that she has asylum is irrelevant to his claims here today? No, Your Honor. I believe that it's very relevant because it relevant to the issue of the well-founded fear of the future persecution. This court has a long established precedent that the family ties and the persecution of the family members. But that's something that the court can offer? But I don't think that that was in the record before the BIA. Don't you have to file a motion to reopen? Your Honor, the documents regarding the marriage have been submitted prior to the hearing. But your argument now is that he may suffer persecution if he goes back to Armenia because of his wife's status. Is that correct? Your Honor, my argument here is that the RGA refusal to continue the file because the documents were filed as the news were coming off the news channels in Armenia. On April 12, 2004, there was a new wave of violence against political opposition in Armenia. Respondents and petitioners' family was directly affected by that new wave. And I did file, I was retained early April 2004 to represent petitioner. And I did file the evidence in support of his claim showing that he's married and that the new wave of violence occurred on April 22. When I was in courtroom, I offered some additional materials regarding the violence that occurred on April 27 of 2004. I could simply not present the supplemental evidence prior, like 30 days in advance, as was requested by the local rules or the RGA in the case. But my argument here is that because the events were taking place at that time, I did timely present the evidence. I attached the pre-hearing brief which clearly explained how this evidence is pertinent to the petitioner's claim. Ms. Besman, as I understand, there were numerous previous continuances in this matter. Is that correct? There was not numerous previous continuances. Moreover, the statement by the... How many were there? It was several. I did not represent him. I understand that. But it seemed to me there were quite a few. More than 10. However, the evidence that was offered at court at that time by me was directly going to the heart of his claim. I did not ask any... Can I ask this question? Is it not correct that the IJ ultimately heard via the petitioner about the relation of his marriage to his wife, the political activities of his wife, her family, the testimony that you spoke of about changes in Armenia? All that ultimately came in via the petitioner. Isn't that correct? It did come in. However, Your Honor, there was like a 15-minute argument that some of it is not even on the record because I did not have a... The IJ had ultimate unilateral power to press or depress the button and put the evidence on the record or not. I understand that. But I'm looking here. It looks to me like you've got pages 256 through 270, 274 through 275, 419 through 422. That's not inconsequential. I mean, there's a significant amount of evidence that I understand to be the very evidence that you're referring to that the IJ had in the record, apparently considered prior to the decision. If it's in the record, why was it not considered? Well, he said that... I believe that the case was prejudged even before the decision. Well, that's a different matter. You're entitled to, of course, whatever view you want, but the reality is that's a different matter than what you were saying before, which was that there's evidence that you wanted to get in. You feel there was a due process denial because you couldn't get it in in the way you wanted to get it in. My point is simply that the record seems to reflect that all of the evidence that you wanted to get in ultimately got in before the IJ ruled. Is that correct? Your Honor, I believe that there was no way given to the evidence, you know, to the printed materials that were submitted. Moreover, my argument is that the way that the IJ had handled the hearing greatly affected my client's ability to testify. He suffers from hypertension. If you see the judge who is highly negative and who's making gestures and saying that he does not believe in a way that your marriage could, you know, it's a valid marriage because you decided to marry less than a month. Yes, it greatly affected the person's ability to testify. Did you try to somehow get the judge removed? No, Your Honor. I could not. I mean, I have to disclose to the court that I have a completely unrelated case. I did file a complaint against the very same judge because he denied a written motion to continue the master hearing when I had the marriage hearing. But in this case, you did not. No, I did not. So basically, you have a judge. You may or may not like the judge. You may or may not like what the judge rules. But you made no objection to the judge. The judge went forward. Your argument is that certain evidence that you felt was important did not get in, but the record reflects, I believe, that it did get in. You just don't like the way the judge interpreted the evidence and the way the judge ruled. No, Your Honor. I did ask for the continuance. I could not exactly ask the judge to recuse himself from the case because I did not like the way that he was handling the proceeding. That was my first appearance before that judge on this particular case. And I had requested that I wanted to put Seda Aslayan on the witness stand and to allow her to testify, and that was denied. And I believe that there is a series of cases that went before this court and specifically Moreland v. Mukasey, Zalatukhin v. Gonzalez that do indicate, and specifically violated due process by refusing to allow applicants to children to testify on the basis that they did not appear on the pretrial witness list. Okay, but let's assume even that the IHA violated his local rules. The reality is, and you know this as an experienced lawyer, the trial judge is given an enormous degree of discretion. Each judge has to, you know, organize and control his or her courtroom. That's just the fact of life. And in this particular instance, I don't believe that there's any way you can contradict the fact that each part of the evidence that you said you wanted to get got in. The question is, you want it to be spoken by the wife in this case. And I respect the fact that it may have had more of a dramatic effect, but the reality is that the judge had discretion. The judge concluded that it was an untimely and improper proffer, but allowed the evidence to come in by your client. I just, with respect, I don't understand how you get to a constitutional due process violation under these circumstances. Your Honor, and I do believe that, you know, like the judge abused the discretion because his decision to not allow the evidence based on the fact that it was untimely is not true. It was submitted in a timely matter because it was submitted at the time that it become available. You cannot submit something that you do not have. I could not submit anything in early April if the violations of, you know, like, and the violence started in Armenia subsequent to April 12th. How could I submit? Let me just interrupt a second. When you were trying to get this evidence in, you told the judge essentially, did you not, what the testimony would be about? Yes, Your Honor. And one of the problems that I have with your position is that it doesn't seem to me that in light of all the evidence and the inconsistencies and the like, that this evidence, while you say it was material, it might have had a bearing, but it doesn't seem to me that it could possibly have changed the result. Your Honor, I believe that if the documents were submitted and if the judge... Tell me in a very short time, if you can, why the documents would show that he was, subject to persecution if he went back to Armenia? I believe that it would show, because the documents show that there was a pattern of persecution against members of the family of the high-ranking opposition members. There was evidence that proved that Petitioner's mother-in-law, she was one of the leaders and she was high-ranking...  Mother-in-law, yeah, I'm talking about the mother-in-law. Okay, well, all right, I understand. And I believe that also the way that the IJA handled the hearings, the gestures that she made, the, you know, like facial expression, the grimaces, it affected the person's ability to testify. He could not concentrate. He made several, you know, like, it was minor inconsistencies. And even the BIA, they said that, you know, like, all of it, it would really not, you know, like, separately give rise to the negative capability. But my argument here is that the IJA behavior had created the atmosphere where my client could not testify in a coherent matter. He was red in the face and that was attributed that he was lying. Okay? The IJA made comments that my client was married to his wife for months when, as a matter of fact, he was married to, he married her on March 19, 2004. The argument of immigration judge, well, you had many continuance... Well, you answered my question. I wanted to know about the testimony. Now you're talking about the judge's demeanor and we understand that. So I think your time is up. Thank you. Let's hear from the government. Good morning. May it please the Court, my name is John Anklus and I'll be presenting arguments this morning on behalf of the United States. Your Honors, in this immigration case, the Court should affirm the agency's denial of asylum application and therefore, he failed to sustain his burden to establish eligibility for relief from removal. Further, with respect to the due process claim, Your Honor, the agency supplied petitioner with ample process in this case. Upon his counsel's motion, he received no fewer than six continuances and to the extent that he was not allowed to submit any evidence, it was solely because his most recent counsel failed to comply with the local rules of the San Diego Immigration Court and failed to submit an affidavit to the Court detailing the cause of the delay in submitting of the documents. Now that rule requires the evidence to be in how long before the hearing? I believe it is 14, if not 15 days, Your Honor. How many? I believe it's 14 days, Your Honor. And this evidence was offered, what, about five days? I believe that's correct, approximately. Well, it is a little bothersome to me that, you know, the attorney sort of said what the evidence was and, you know, after this long hearing, and of course, this case has been going on for years, that the IJ would not at least let it go on, although some of it seems clearly immaterially trying to in-laws now rather than its own problem. So what do you comment on that? The San Diego Immigration Court rule has a significant purpose, Your Honor. Has what? Has a significant purpose. I know they're so busy down there that one case after another will just pile up. And they prepare their cases on the start of the week, and so they want the evidence in hand in advance so that they can be prepared for the case. There's numerous different things that counsel could have done on this case, Your Honor. I mean, to the extent, first off, most of the evidence was available more than 14 days in advance. Several of the articles are about a month before the hearing date. So there was — Can I just cut to the chase? I ask Ms. Besman whether the evidence that she wanted to get in ultimately got in via the petitioner. I believe she indicated or concurred that that was correct. Doesn't that solve the problem right there? I believe the evidence did get in, Your Honor, yes. Okay. So, I mean, even if there was a minor — even if you don't agree with the local rules, the fact is it got in. That's correct, Your Honor. And I also believe that in terms of the due process, there was numerous other alternatives that were available to counsel, whether they should have come to the hearing with an affidavit explaining the lateness and or to the extent that this is really something that was contemporaneous, there could have been a motion to reopen. So the process that was afforded to a petitioner in this case was extensive, and there's really no basis to overturn the Court's decision based on that. One of the things I wondered about, we often learn about what's going on in these countries by State Department reports. Were there State Department reports about the unrest in Armenia in the record in this case? There is a State Department report pertaining to Armenia in the record in this case, Your Honor, yes. Recent ones? Fairly recent. I believe it was fairly recent, Your Honor. Do you know what those reports had to say about the unrest? If you don't know offhand, don't worry about it. I can't state it specifically, Your Honor, and I don't want to give a false impression of it. I also think that it's important, in this case, to note that the petitioner's claims were denied based on the fact that he was deemed to be not credible, based on evidence that went to the heart of the matter. There are numerous factors that that's based upon, and the petitioner claimed that his wife's and his mother-in-law's party involvement was material, but he couldn't state the name of the party. He merely called it opposition. Was his own political affiliation the same as his mother-in-law's? No. They belonged to two different parties? That is my understanding, Your Honor. Were the parties part of a coalition or something? Are they sympathetic to each other? It's hard to tell exactly, Your Honor, because he didn't fully identify his mother's party, to the best of my reading of the record. And even his statements regarding his own party were vague and didn't say anything. He commented that general statements that his party wanted the best for the people and the best for Armenia. And little in reference to anything specific about his party. And I think that was one of the significant bases for the immigration judge's determination, as well as the fact that there was pretty major omissions from his asylum application. He did not list any of the beatings that supposedly occurred while he was in the military. And I think all of these put together, each individually goes to the heart of the matter and put together, they form the basis for credibility determination, and that is supported by substantial evidence in the record. Thank you, counsel. Was there anything further? No. I just want to say for the foregoing reasons, it's the government's position the court should deny the position for review. Thank you very much, Your Honor. Thank you. Ms. Beesman, you consumed all of your time, but we helped you do that. I will afford you one minute if you would like to make a final statement to the court. I would like to indicate that the submission to the court was, my submission to the court, along with the brief, was made on April 22nd, 2004, so it was 10 days prior to the hearing, and it was sent to the court by next day delivery. And I could not control the fact that it did get to the court file on April 26th. Nevertheless, it was more than five days in advance, and the court had the opportunity to review it. In regard to the issue that you, Your Honor, brought up, I do not believe that any, you know, documents submitted with my brief whatsoever weight, and that he did not give it back to me, so, you know, like, they are up here in the record. However, they were not considered for the decision. Did the judge say that? Yes, Your Honor. On the record. Yeah, he did not. No, no, no. What did the judge say on the record? He said these matters are in here, but I'm not going to consider them. Okay, well, yeah. He said that it's not. Where in the record? Well, I don't have the exact page, and once again, I. . . Why don't you send us a 28-J letter and tell us exactly where in the record the IJ said, I've got these things in here on the pages that I talked to you about, and I'm not going to consider them. That's what I'd like to know. Okay. I think you'll find he didn't say that, or she didn't say that. Well, Your Honor, as I said, I do believe that it was on the record, and once again. . . You can find it. Unfortunately. . . We'd love to have it. Unfortunately, some of the conversations that took place between me and the immigration judge, they are not in the record, okay? If it's not in the record, it doesn't exist before this Court. And I understand, but that's one of the reasons. But then in his opinion, he states that I wasted 15 minutes of his time. And if you look into the excerpts, there's not an amount of 15 minutes. So it's obvious there was more conversation going on. Okay. And if you give me. . . Counsel, Judge Smith has asked you to go ahead and put it in a letter if you can find it, and we'll be happy to receive that. But you've taken up more than the time that I allotted to you. Okay. I will send the letter. Thank you. That would be good. We thank both counsel for the argument, and the case is submitted.
judges: Bright, Bybee, Smith M.